Cartrell Lewan McCOY *v.* STATE of Arkansas

CA CR 00-905                                    49 S.W.3d 154

Court of Appeals of Arkansas
Division I
Opinion delivered July 5, 2001

*William R. Simpson, Jr.*, Public Defender; *Brett Qualls* and *Steve Abed*, Deputy Public Defenders, by: *Deborah R. Sallings*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

LARRY D. VAUGHT, Judge. Appellant Cartrell Lewan McCoy brings this appeal from Pulaski County Circuit Court where he was found guilty of attempted first-degree murder and burglary. In addition, based upon the convictions, the court revoked appellant's 1999 probation that was ordered after he pled guilty to possession of a controlled substance with intent to deliver. Appellant challenges his attempted first-degree murder conviction on the basis that the trial court erred in refusing to instruct the jury on the lesser included offense of attempted second-degree murder. His attorney also contends that there are no meritorious grounds that would support an appeal of the revocation of his probation. We reverse the attempted first-degree murder conviction and remand for a new trial, and we remand for supplementation of the record on the revocation of appellant's probation.

Appellant was charged with attempted first-degree murder and residential burglary. It was alleged that on August 11, 1999, appellant unlawfully entered the home of Rodney Wilson and, acting with the purpose of causing the death of another person, took a

substantial step in a course of conduct intended to culminate in the first-degree murder of Sarah Battung. Based on these charges, the State also filed a petition to revoke his probation in another case where he pled guilty to possession of a controlled substance (cocaine) with intent to deliver.

A jury trial was held on April 12, 2000. The jury found appellant guilty on both charges, and appellant was sentenced to thirty years' imprisonment for attempted first-degree murder and five years' imprisonment and a $5,000 fine for residential burglary. The trial court ordered the sentences to be served consecutively. The trial court heard the revocation case while the jury deliberated during the sentencing phase in the principal case. The parties stipulated that the evidence presented in the principal case could be considered in the revocation proceedings. In addition to that evidence, the State presented the testimony of appellant's probation officer, indicating that the conditions of appellant's probation required him to obey all state laws. Based upon the evidence introduced, the trial court found that appellant violated the conditions of his probation. The trial court sentenced him to fifteen years' imprisonment and ordered that it run concurrently with the other sentences.

### Attempted First-degree Murder Conviction

■ Appellant brings this appeal contending the trial court committed reversible error in refusing to give his proffered jury instruction on the lesser included offense of criminal attempt to commit second-degree murder. It is reversible error to refuse to give an instruction on a lesser included offense when the instruction is supported by even the slightest evidence. *Britt v. State*, 344 Ark. 13, 38 S.W.3d 363 (2001). We will affirm a trial court's decision to exclude an instruction on a lesser included offense only if there is no rational basis for giving the instruction. *Id.* Thus, we must determine whether attempted second-degree murder under Ark. Code Ann. § 5-10-103(a)(1) (Repl. 1997) is a lesser-included offense of attempted first-degree murder under Ark. Code Ann. § 5-10-102(a)(2) (Repl. 1997), and, if so, whether there was sufficient evidence to warrant the instruction on attempted second-degree murder.

■ Arkansas Code Annotated section 5-1-110(b) (Repl. 1997) declares what constitutes a lesser included offense:

(b) A defendant may be convicted of one offense included in another offense with which he is charged. An offense is so included if:

(1) It is established by proof of the same or less than all the elements required to establish the commission of the offense charged; or

(2) It consists of an attempt to commit the offense charged or to commit an offense otherwise included within it; or

(3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpable mental state suffices to establish its commission.

In addition, our caselaw has set out these same three basic requirements as essential to a determination of lesser-included-offense status. *Hill v. State*, 344 Ark. 216, 40 S.W.3d 751 (2001) (citing *Byrd v. State*, 337 Ark. 413, 992 S.W.2d 759 (1999); *Brown v. State*, 325 Ark. 504, 929 S.W.2d 146 (1996); *Tackett v. State*, 298 Ark. 20, 766 S.W.2d 410 (1989)). While it seems clear that second-degree murder under Ark. Code. Ann. § 5-10-103(a)(1) is a lesser included offense of Ark. Code Ann. § 5-10-102(a)(2), *see Britt v. State, supra,* the issue of whether attempted second-degree murder is a lesser included offense of attempted first-degree murder under these subsections appears to be an issue of first impression.

Under Ark. Code Ann. § 5-10-102(a)(2), a person commits first-degree murder if "with the purpose of causing the death of another person, he causes the death of another person." Second-degree murder under Ark. Code Ann. § 5-10-103(a)(1) is committed by a person if "[h]e knowingly thacauses the death of another person under circumstances manifesting extreme indifference to the value of human life." A person attempts to commit an offense if he "[p]urposely engages in conduct that constitutes a substantial step in a course of conduct intended to culminate in the commission of an offense whether or not the attendant circumstances are as he believes them to be." Ark. Code Ann. § 5-3-201(a)(2) (Repl. 1997). Section 5-3-201(b) provides:

When causing a particular result is an element of the offense, a person commits the offense of criminal attempt if, acting with the kind of culpability otherwise required for the commission of the offense, he purposely engages in conduct that constitutes a substantial step in a course of conduct intended or known to cause such a result.

■ At trial, the State argued that appellant was not entitled to an instruction on attempted second-degree murder because an attempt crime requires a purposeful mental state and second-degree murder requires a knowing mental state. Based on these facts, the State reasoned that one cannot purposely do something that would require a less-than-purposeful mental state. However, the Original Commentary to Ark. Code Ann. § 5-3-201(b) suggests otherwise, providing:

> Subsection 5-3-201(b) makes it clear that, with respect to result oriented offenses, purposeful conduct constituting a substantial step in a chain of events intended or known to be capable of producing a result gives rise to liability if accompanied by the culpable mental state, respecting attendant circumstances, required by the definition of the object offense. This section is necessary to cover situations such as the following: A blows up an occupied building, not intending to cause the death of another person, but knowing or believing in the virtual inevitability of this result. If fortuitously no one is killed, A may nonetheless be prosecuted for attempted second degree murder under § 5-10-103(a)(2) despite the absence of any purpose on his part to cause a death. A's conduct would not be reached under subsection 5-3-201(a)(1) or (2) because of this absence of purpose. Accordingly, to reach this sort of conduct, subsection (b) relaxes somewhat the purposeful conduct requirement common to the Code's inchoate offenses: under § 5-3-201(b) knowledge regarding a result will generate liability when coupled with purposeful conduct.

Thus, under Ark. Code Ann. § 5-3-201(b), attempted second-degree murder requiring a knowing mental state can be a lesser included offense of attempted first-degree murder requiring a purposeful mental state. Here, the evidence at trial supported an instruction for attempted first-degree murder requiring a purposeful mental state. Arkansas Code Annotated section 5-2-203(c) (Repl. 1997) provides that "When acting knowingly suffices to establish an element, the element is also established if a person acts purposely." Thus, appellant, acting with the kind of culpability otherwise required for the commission of second-degree murder, purposely engaged in conduct constituting a substantial step (i.e., getting the gun and firing it into a room full of people) in a course of conduct intended or known to cause such a result (i.e., death).

The State also contends in its brief that attempted second-degree murder is not a lesser included offense of first-degree murder because the proffered instruction required proof of an additional

element — circumstances of extreme indifference — that is not required by attempted first-degree murder. The State cites *Byrd v. State,* 337 Ark. 413, 992 S.W.2d 759 (1999), in support of its argument. There, the supreme court stated that "Second-degree murder pursuant to Ark. Code Ann. § 5-10-103(a)(1) cannot be a lesser included offense of first-degree murder under Ark. Code Ann. § 5-10-102(a)(3) because that second-degree murder charge requires a showing that one knowingly caused the death of another person under circumstances manifesting extreme indifference to the value of human life, an element in addition to the requirements of the statute under which appellant was charged." *Byrd v. State, supra* at 427, 992 S.W.2d at 767. The court concluded:

> In the instant case, the information charged appellant with knowingly causing the death of Austin Davis, a person aged fourteen years or younger. The additional language of knowingly causing the death under circumstances manifesting extreme indifference to human life was not charged in the information, and was not required to be proven in order to sustain a conviction for first-degree murder. Because appellant was not so charged, there is no rational basis to justify charging the jury with the lesser offense of second-degree murder.

*Id.* at 428, 992 S.W.2d 767.

■ *Byrd* is clearly distinguishable. Here, appellant was charged with attempted first-degree murder under Ark. Code Ann. § 5-10-102(a)(2), requiring a purposeful mental state, not first-degree murder under Ark. Code Ann. § 5-10-102 (a)(3), requiring that the actor knowingly cause the death of a person fourteen years of age or younger. The additional language of "circumstances manifesting extreme indifference to the value of human life" found in Ark. Code Ann. § 5-10-103(a)(1) requires that the circumstances must be more dire and formidable in terms of affecting human life. *See Harmon v. State,* 340 Ark. 18, 8 S.W.3d 472 (2000), and *Tigue v. State,* 319 Ark. 147, 889 S.W.2d 760 (1994). Those circumstances, which indicate conduct beyond mere knowledge, are included in the purposeful mental state found in Ark. Code Ann. § 5-10-102(a)(2), but not Ark. Code Ann. § 5-10-102(a)(3), which only requires that the actor knowingly cause the death of another person fourteen years old or younger. We therefore hold that under the facts of this case, attempted second-degree murder under Ark. Code Ann. § 5-10-103(a)(1) is a lesser included offense of attempted first-degree murder under Ark. Code Ann. § 5-10-102(a)(2).

We must now address whether there was sufficient evidence to warrant the instruction on attempted second-degree murder. To be entitled to the instruction, appellant must be able to point to evidence in the record that supports a finding that appellant acted knowingly under circumstances manifesting extreme indifference to the value of human life rather than purposely. While we need not discuss all the evidence presented at appellant's trial, we will identify that relevant proof necessary to decide this issue.

The evidence introduced at trial revealed that appellant and the victim, Sarah Battung, dated for over two years before she broke off the relationship on June 30, 1999. After the break-up, appellant tried to get back together with Battung and continued to call her. She resisted his efforts. On the evening of August 11, 1999, Battung was staying at Rodney Wilson's apartment, when the appellant called repeatedly trying to apologize. Battung hung up on him several times. During one phone call, Battung cursed at appellant and then kissed another man. Appellant became aware of the kiss as a result of the reaction of the others in the apartment, and he threatened to kill Battung. After appellant's telephone calls, appellant's sister, Trineka McCoy, went out on the balcony of the apartment and found appellant sitting in a chair on the balcony. Trineka testified that appellant was "pretty upset" that night. She told him not to come inside, knowing Battung had a no-contact order against him. Appellant entered the apartment and began fighting with two men. Trineka told police after the incident that when appellant entered the apartment he was accusing Battung of sleeping with another man. Battung was walking from the kitchen to the couch when she saw appellant enter the apartment and begin fighting. Battung sat down on the couch and began to dial 911. Appellant asked her whether she was calling the police. When she responded affirmatively, appellant held the gun out in front of him and began shooting.

■ ■ When there is the slightest evidence to warrant an instruction on a lesser included offense, it is error to refuse to give it. *Hill, supra.* Based on the testimony presented at trial, there was some evidence to support a finding that appellant entered the apartment with the purpose to confront Battung or to confront the men he thought she was with, and not necessarily with the purpose to kill Battung. This would support a conclusion that he acted knowingly under circumstances manifesting extreme indifference to the value of human life. The jury had a right to consider that evidence. Therefore, the trial court erred by refusing to instruct the jury on the lesser included offense of attempted second-degree murder.

■ The State argues that if the attempted second-degree murder is a lesser included offense of attempted first-degree murder and if there was evidence to support an instruction, this court should affirm because appellant's proffered jury instruction did not accurately state the law. Appellant's proffered instruction followed the language of AMI Crim. 2d 501. When a trial court determines that the jury be instructed on an issue, the model criminal instructions shall be used unless the trial court determines that they do not accurately state the law. Webb v. State, 326 Ark. 878, 935 S.W.2d 250 (1996). We find the State's argument unpersuasive because, in the present case, the trial court concluded that the jury should not be instructed on attempted second-degree murder, and thus never addressed the issue of whether AMI Crim. 2d 501 accurately stated the law.

### Revocation of Probation

On February 3, 1999, appellant pled guilty to possession of a controlled substance (cocaine) with the intent to deliver, a class Y felony. He was sentenced to forty-eight months of probation and fined $300. His driver's license was also suspended for six months. His probationary sentence was conditioned upon his compliance with written rules of conduct, which included a requirement that appellant obey all state and federal laws. The State filed a petition for revocation on October 21, 1999, alleging that he committed the offenses of criminal attempt to commit murder in the first degree and residential burglary during his probation.

The April 12, 2000, trial on the charges of attempted first-degree murder and burglary served as a basis for the revocation. The parties stipulated that the evidence introduced at the trial would also serve as the evidence in support of the revocation. In addition to this evidence, the State presented testimony of appellant's probation officer while the jury deliberated during the sentencing phase of trial.

Pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Rule 4-3(j) of the Rules of the Arkansas Supreme Court and Court of Appeals, appellant's counsel argues that appellant's appeal of his probation revocation lacks merit; however, appellant's counsel did not file a motion to withdraw. Although our supreme court has held that a petitioner's counsel must file a motion for permission to withdraw as counsel in order to file a no-merit brief, *Blue v. State*, 287 Ark. 345, 698 S.W.2d 302 (1985), this court has held that

> [I]t is not inconsistent with *Blue* to require that when, as in the case at bar, two cases are considered simultaneously by the trial court, one of which results in an appeal that defense counsel considers to be meritorious, and one of which results in an appeal that defense counsel considers to be without merit, the purpose and spirit of Rule 4-3(j) is best served by requiring that appellant be notified of her right to file points on appeal with respect to the 'no-merit' case, notwithstanding that defense counsel has not moved to withdraw from representation of the appellant in both cases.

*Harris v. State*, 72 Ark. App. 227, 234-35, 35 S.W.3d 819, 824 (2000). The no-merit portion of the brief purportedly refers to everything in the record that might arguably support an appeal and contains a statement of the reasons why counsel considers there to be no point that might arguably support an appeal. The State concurs that the appellant's counsel has complied with Rule 4-3(j) and that the appeal has no merit. The clerk of this court furnished the appellant with a copy of his counsel's brief and notified him of his right to file a list of points of appeal. The appellant has not filed such a list of pro se points.

We are not able to reach the merits of this issue, because the notice of appeal only designated specific portions of the record. Specifically, the notice designates "the entire trial record and revocation hearing, including any audio and visual recordings, but excluding voir dire and opening and closing arguments, except for objections during same, as his record of appeal in his case. Also requested is the omnibus hearing held on March 15, 2000." Our review in no-merit cases, pursuant to *Anders v. California, supra,* and Rule 4-3(j) of the Rules of the Arkansas Supreme Court and Court of Appeals, requires that we review the entire record for potential error in order to determine whether the appeal is wholly without merit. *Campbell v. State*, 74 Ark. App. 277, 47 S.W.3d 915 (2001). Therefore, in the absence of the entire record, we must return the case to appellant's counsel to supplement the record to include those parts originally omitted, and, if necessary, to file a substituted brief that addresses any objections contained in those parts of the record.

Reversed and remanded in part; and remanded in part for supplementation of the record.

HART and NEAL, JJ., agree.

## SUPPLEMENTAL OPINION ON GRANT OF REHEARING

CA CR 00-905                                    ___ S.W.3d ___

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered August 29, 2001

*William R. Simpson, Jr.*, Public Defender, by: *Brett Qualls* and *Steve Abed*, Deputy Public Defenders, for appellant.

*Mark Pryor*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

L ARRY D. VAUGHT, Judge. Appellant petitions this court for rehearing of our decision of July 5, 2001, remanding the appeal of his probation revocation for supplementation of the record. Appellant argues that remand for supplementation of the record pursuant to *Campbell v. State*, 74 Ark. App. 277, 47 S.W.3d 915 (2001), was unnecessary. We agree.

■ After reviewing appellant's petition, we find that *Campbell* does not apply to this case. Here, unlike *Campbell,* there are two cases consolidated for appeal. One case is a jury trial on charges of attempted first-degree murder and residential burglary, and the other is a petition for revocation of probation, which was based on the attempted first-degree murder and residential burglary charges. The parties stipulated that the evidence introduced at the jury trial would also serve as the evidence in support of the revocation. In our July 5, 2001, opinion, we remanded the revocation case for supplementation of the record, based on *Campbell,* because the record failed to include all of the proceedings, including opening statements, closing arguments, and jury voir dire. *Campbell* did not involve a revocation, but rather a jury trial on a rape charge that resulted in a conviction. The instant revocation proceeding was a bench trial, which was held simultaneously with the jury trial on the charges of attempted first-degree murder and residential burglary. The opening statements, closing arguments, and jury voir dire related only to the jury trial. Because the portions of the proceedings omitted from the record were not relevant to the revocation of probation, they are unnecessary for our review of the no-merit brief filed with respect to the revocation.

■ The facts pertaining to the revocation and the law with respect to a no-merit brief were addressed in our original opinion, and thus do not need to be restated. From our review of the record and the briefs presented, we conclude that there has been full compliance with Rule 4-3(j) of the Rules of the Arkansas Supreme Court and Court of Appeals and that this appeal is without merit. Accordingly, we affirm the revocation of appellant's probation.

HART, BIRD, NEAL, BAKER, and ROAF, JJ., agree.